In re POLYMEDICA CORPORATION SECURITIES LITIGATION.

Thomas Thuma, on behalf of himself and all others similarly situated, Richard Bowe, John T. Muha, Lawrence Storey, Jianwei Xu, and Howard Hoffman, Plaintiffs,

v.

Polymedica Corporation, Liberty Medical Supply, Inc., Eric G. Walters, Warren K. Trowbridge, and Steven J. Lee, Defendants.

No. CIV.A. 00–12426–WGY.

United States District Court, D. Massachusetts.

April 7, 2006.

Steven R. Astley, Hunton & Williams LLP, Miami, FL, Michael G. Bongiorno, Wilmer, Cutler, Pickering, Hale and Dorr LLP, Boston, MA, Beth E. Bookwalter, Wilmer, Cutler, Pickering, Hale and Dorr LLP, Boston, MA, Lisa M. Cameron, Hale & Dorr, LLP, Boston, MA, Gus P. Coldebella, Goodwin Procter, LLP, Boston, MA, Michael DeMarco, Kirkpatrick & Lockhart Nicholson Graham LLP, Boston, MA, Yordanka V. Delionado, Hunton & Williams, Miami, FL, Anthony M. Feeherry, Goodwin Procter, LLP, Boston, MA, Stuart M. Glass, Goodwin Procter, LLP, Boston, MA, Stacey L. Gorman, Kirkpatrick & Lockhart, Nicholson Graham LLP, Boston, MA, Jeffrey W. Gutchess, Hunton & Williams, New York, NY, Peter J. Kolovos, Wilmer, Cutler, Pickering, Hale and Dorr LLP, Boston, MA, Derek M. Meisner, Kirkpatrick & Lockhart Nicholoson Graham LLP, Boston, MA, James W. Prendergast, Wilmer, Cutler, Pickering, Hale and Dorr LLP, Boston, MA, Daniel E. Rosenfeld, Kirkpatrick & Lockhart, Nicholson Graham LLP, Boston, MA, Jeffrey B. Rudman, Wilmer, Cutler, Pickering, Hale and Dorr LLP, Boston, MA, Emily R. Schulman, Wilmer, Cutler, Pickering, Hale and Dorr LLP, Boston, MA, for Defendants.

Theodore M. Hess–Mahan, Shapiro, Haber & Urmy LLP, Boston, MA, Robert A. Izard, Schatz & Nobel, P.C., Hartford, CT, Seth R. Klein, Schatz & Nobel, P.C., Hartford, CT, Jeffrey Nobel, Schatz & Nobel, P.C., Hartford, CT, Andrew M. Schatz, Schatz & Nobel, P.C., Hartford, CT, Thomas G. Shapiro, Shapiro Haber & Urmy LLP, Boston, MA, Allan J. Sullivan, Baker & McKenzie LLP, Miami, FL, for Plaintiffs.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

This order addresses the Plaintiffs' Motion to Compel PricewaterhouseCoopers LLP to Produce Documents [Doc. No. 104].

## I. INTRODUCTION

On May 19, 2003, the Plaintiffs served a subpoena on PricewaterhouseCoopers LLP ("PWC") seeking the production of documents underlying the creation of a report that PWC had prepared for PolyMedica Corp. ("PolyMedica") and Liberty Medical Supply, Inc. ("Liberty") (collectively, the "Defendants") and which the Defendants had provided to the Plaintiffs and to the Securities and Exchange Commission (the "Commission"). Pls.' Mem. in Supp. of Mot. to Compel Produc. of Docs. [Doc. No. 105] ("Pls.' Mem.") at 6; Decl. of Seth R. Klein ("Klein Aff.") [Doc. No. 106], Ex. A. The Defendants opposed the subpoena, and on February 27, 2004 the Plaintiffs filed a motion to compel production of the documents. Pls.' Mem. at 7. The Defendants argued that the material was protected by attorney-client privilege, by the work-product doctrine, and because PWC was a non-testifying expert. Defs.' Mem. in Opp'n to Pls.' Mot. to Compel Produc. of Docs. [Doc. No. 113] ("Defs.' Mem.") at 2. At a hearing on the motion on June 2, 2004, Judge Keeton denied the Plaintiffs' motion in part, saying that he was "not ordering [the materials] produced at this time," Mot. Hr'g Tr. at 41 (June 2, 2004), and ordering the defense counsel to submit to the Plaintiffs a privilege log of all materials in PWC's possession which the Defendants were withholding, Mot. Hr'g Tr. at 39–40.

On January 24, 2006, the Plaintiffs filed a second motion to compel production of documents from PWC. [Doc. No. 104]. They argue that they are entitled to the documents because the Defendants have failed to complete the privilege log as ordered, because the documents are not protected, and because any protection was waived when the Defendants and PWC gave the report to the Commission and to them.

## II. DISCUSSION

The Defendants have designated PWC a non-testifying expert. Defs.' Mem. at 1; Mot. Hr'g Tr. at 22–23. The discovery request is therefore governed by Federal Rule of Civil Procedure 26(b)(4)(B), which states:

> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Fed.R.Civ.P. 26(b)(4)(B). The protection afforded non-testifying experts is distinct from the work-product doctrine and the attorney-client privilege. *See* Fed.R.Civ.P. 26, 1970 advisory committee's notes. The three questions at issue here are whether PWC was retained or specially employed in anticipation of litigation or preparation for trial, whether the Defendants waived Rule 26(b)(4)(B) protection of the documents by disclosing the report to the Plaintiffs, and whether the Plaintiffs have shown exceptional circumstances.

█ As to the first question, the First Circuit has interpreted the similar language of Rule 26(b)(3) relating to the work-product doctrine, "documents and tangible things ... prepared in anticipation of litigation or for trial," to mean that "documents should be deemed prepared for litigation and within the scope of the Rule if, 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation.'" *Maine v. United States Dep't of the Interior*, 298 F.3d 60, 68 (1st Cir.2002) (citing *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir.1998); quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2024, at 343 (1994)). In the same work-product context of Rule 26(b)(3), this Court has stated that "anticipation of litigation" requires both a

reasonable anticipation of litigation as well a causal connection between the work and the litigation. *In re Grand Jury Subpoena,* 220 F.R.D. 130, 146 (D.Mass.2004). This Court noted that it was unclear whether the First Circuit intended the "because of" test to apply to causation alone or to both anticipation and causation. *Id.* at 146, 148, 151. As a test for anticipation, this Court adopted the standard of the District of Columbia Circuit: "'[T]he lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable.'" *Id.* at 147 (quoting *In re Sealed Case,* 146 F.3d 881, 884 (D.C.Cir.1998)). This Court also adopted the sliding scale approach of the Third and Fifth Circuits regarding anticipation and causation, "allowing a stronger showing on one to compensate for a weaker showing on the other." *Id.* at 148 (citing *United States v. Rockwell Int'l,* 897 F.2d 1255, 1266 (3d Cir.1990); *United States v. El Paso Co.,* 682 F.2d 530, 542 (5th Cir.1982)). Given the similar language in Rule 26(b)(3) and 26(b)(4)(B), the Court will use the same fact-bound standard in determining whether PWC was retained or specially employed in anticipation of litigation.

■ This Court noted in *In re Grand Jury Subpoena* that "the party asserting an applicable privilege has the burden of establishing that it applies" and that the privilege's applicability must be demonstrated by a fair preponderance of the evidence. *Id.* at 140 (citing *FDIC v. Ogden Corp.,* 202 F.3d 454, 460 (1st Cir.2000)). While that case addressed the work-product doctrine and Rule 26(b)(3), the same standard ought apply to the protection of non-testifying experts under Rule 26(b)(4)(B).

■ As evidence that PWC was retained in anticipation of litigation, the Defendants point to a letter from PWC to the law firm of Hale and Dorr LLP dated July 24, 2001. PWC confirms in the letter that it is being retained "to assist in your giving legal advice to your Client by providing the services . . . set out below." Klein Aff., Ex. G. Those services "include assisting you in investigating and evaluating certain business practices at your Client's subsidiary, Liberty Medical Supply, Inc." *Id.* While the letter's language may be self-serving, when seen in its context it also appears to be true.

At the time Hale and Dorr retained PWC, litigation was not merely possible, it had already begun. The original complaint in this suit was filed on November 27, 2000—eight months before PWC was retained. *See* Complaint [Doc. No. 1]. Moreover, as this Court held in *In re Grand Jury Subpoena,* "once a government investigation has begun, litigation is sufficiently likely to satisfy the 'anticipation' requirement." 220 F.R.D. at 147. While neither party explicitly claims or denies that a formal government investigation had begun, the circumstances surrounding a July 26, 2001 meeting between PWC, Hale and Dorr, and the Commission raise every inference that one had. In November of 2000 a series of articles was published questioning the accuracy of PolyMedica's financial results and reporting that the FBI was conducting an investigation into possible health care fraud. Pls.' Mem. at 3–4. A further series of articles was published in early August 2001, reporting that a grand jury was inquiring into Liberty's billing and shipping practices and that the SEC and FBI were investigating. Pls.' Mem. at 4. Indeed, on August 21–22, 2001 FBI agents executed search warrants at Liberty facilities and seized evidence. Pls.' Mem. at 4.

The Plaintiffs argue that PWC's report was not prepared in anticipation of litigation, but to address those issues with which the Commission was concerned. Pls.' Mem. at 12–13. The Plaintiffs point to the beginning of the report, where PWC states that at the July 26, 2001 meeting, the Commission staff expressed interest in certain areas and that "we also agreed that our review was to focus on" the diabetes-related business over a particular time period. Pls.' Mem. at 13. The Plaintiffs thus attack the causation requirement and argue that the statement's language indicates the report was prepared "at the request" of the Commission. Pls.' Mem. at 4. This statement, however, does not explain why PWC had been retained by Hale and Dorr. It only explains why the report covered the issues and time period it did: PWC believed the parties had agreed on the

limits of the Commission's interest. Moreover, PWC agreed that their "review" need only cover a certain area, not that they were to produce a report for the Commission on that area.

■ At most, one could argue that PWC was retained because of possible litigation with the Commission, not because of litigation with the Plaintiffs. As this Court noted in *In re Grand Jury Subpoena,* the work-product doctrine applies to litigation other than that anticipated if the litigation is sufficiently related. 220 F.R.D. at 150. Similarly, non-testifying experts are protected from discovery in sufficiently related litigation. *See, e.g., Bio–Technology Gen. Corp. v. Novo Nordisk,* No. 02–235–SLR, 2003 WL 21057238, at *2 (D.Del. May 7, 2003); *Hermsdorfer v. American Motors Corp.,* 96 F.R.D. 13, 15 (W.D.N.Y.1982). Here, PWC was retained by the same Defendants in the present case as in the potential litigation with the Commission. Moreover, as the Plaintiffs acknowledge, the report given to the Commission discusses and analyzes "the same claims, the same conduct, the same wrongdoing that is alleged in this lawsuit." Pls.' Mem. at 12 (quoting Mot. Hr'g Tr. at 17). This Court finds that the litigation in the present case is closely related to the potential litigation with the Commission.

In light of the timing of PWC's retention and the statement in the letter, the nature of the litigation already filed and the Commission's interest, as well as the content of the expert report, applying the standard set out above, this Court finds that PWC is a non-testifying expert who was retained in anticipation of litigation, whether the present litigation or closely related litigation with the Commission.

■ The second question concerns whether, as the Plaintiffs argue, the Defendants waived any protection under Rule 26(b)(4)(B) of PWC's underlying documents by disclosing PWC's report. Whether the protection of Rule 26(b)(4)(B) can be waived at all is a difficult question. The rule itself does not mention waiver, and the courts are divided. *Compare, e.g., Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship,* 154 F.R.D. 202, 211 (N.D.Ind.1993), *and Atari Corp. v. Sega*

*of Am.,* 161 F.R.D. 417, 420 (N.D.Cal.1994), *with Vanguard Sav. & Loan Ass'n v. Banks,* No. CIV. A. 93–4627, 1995 WL 71293, at *2 (E.D.Pa. Feb.17, 1995). The precise issue here, however, is not whether the Defendants waived protection of the report itself, but whether, by disclosing the report, they waived protection for other documents on the same subject matter. Assuming that the protection of Rule 26(b)(4)(B) could be waived, this Court addresses the more specific issue of subject-matter waiver.

While the First Circuit has not ruled on subject-matter waiver as it applies to a non-testifying expert, its discussion of subject-matter waiver in the context of the attorney-client privilege is helpful. In *In re Keeper of the Records,* the First Circuit held that "the extrajudicial disclosure of attorney-client communications, not thereafter used by the client to gain adversarial advantage in judicial proceedings, cannot work as an implied waiver of all confidential communications on the same subject matter." 348 F.3d 16, 24 (1st Cir.2003). The distinction between judicial and extrajudicial proceedings is premised on "fairness concerns": A party cannot use "the attorney-client privilege as both a sword and a shield." *Id.* The court cites an advice of counsel defense as a "paradigmatic example": A party cannot put attorney-client communications at issue by raising the defense and then assert the privilege to shield any unfavorable evidence. *Id.*

The Supreme Court relied on the same concern for fairness when it applied subject-matter waiver to the work-product doctrine in *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). The defendant in that case sought to impeach a prosecution witness by the testimony of a defense investigator while arguing that the investigator's report was protected under the work-product doctrine. *Id.* at 227, 95 S.Ct. 2160. The Court disagreed, holding that the defendant waived protection with respect to matters covered in the investigator's testimony. *Id.* at 239, 95 S.Ct. 2160. "Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials," the Court reasoned, "than he could elect to testify in his own

behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination." *Id.* at 239–40, 95 S.Ct. 2160.

The same concern for fairness underlies the treatment of discovery of experts under Federal Rule of Civil Procedure 26(b)(4). The 1970 Advisory Committee Notes state that the rule adopts "a form" of the "doctrine of 'unfairness' " and cites, as an example of that doctrine, *United States v. 23.76 Acres of Land,* 32 F.R.D. 593 (D.Md.1963). In that condemnation case, the defendant sought to depose the government's real estate expert witness as to the foundation of his appraisal. *Id.* at 594. The court allowed the deposition of the witness, arguing that "it is not unfair for either party to know in advance of trial what the other party intends to prove, what opinions his opponent's experts hold, the method by which those opinions were formulated, and the facts upon which they are based. They are all matters to be presented to the trier of the facts at trial." *Id.* at 597. Rule 26(b)(4) thus requires discovery of expert witnesses in order to allow the opposing party a fair opportunity to prepare to cross-examine the witness as to his or her expert opinion. In the case of a non-testifying expert, whose opinion will not be presented in court, however, fairness does not require discovery. Indeed, fairness requires that each side fully prepare its own case and not try to benefit through discovery from the other side's better preparation. *See* Fed.R.Civ.P. 26, 1970 advisory committee's notes.

In the present case, subject-matter waiver does not apply to PWC's documents underlying and related to its report because there is no evidence that the Defendants sought to make use of the report in a judicial proceeding. PWC is not testifying, and there is no showing that the Defendants put the report at issue. Furthermore, the Plaintiffs have not shown that their case has been prejudiced in any way by the disclosure of the report. There is no sword here.

 In order to obtain the facts known or opinions held by PWC, therefore, the Plaintiffs bear the burden of showing exceptional circumstances under which it is impracticable for them to obtain the information by other means. *See In re Grand Jury Subpoena,* 220 F.R.D. at 140. They have failed to do so. They have not, for example, alleged that any witnesses interviewed by PWC are currently unavailable. While the Plaintiffs have made general allegations that materials in the Defendants' possession have been destroyed or are otherwise unavailable, they have failed to provide any specific allegations about particular materials. *See* Pls.' Mem. at 5, 18. For instance, they have not identified any gaps in data available from the Defendants themselves or any documents in the Defendants' possession mentioned or relied on in the report but which the Defendants have not produced. The Plaintiffs point out that inventories observed by PWC no longer exist—in essence arguing that PWC is a fact witness as to those inventories. Pls.' Mem. at 18. Rule 26(b)(4)(B) protects both facts known and opinions held by a non-testifying expert, however, and the Plaintiffs have not shown why it would be impracticable for them to obtain the same specific facts from other sources. Finally, the Plaintiffs argue that the costs of hiring an expert to replicate the work of PWC are "astronomical," Pls.' Mem. at 18, and that they should be given the documents for the sake of efficiency. The interests of the Plaintiffs in having access to PWC, however, must be balanced against the interest of parties in freely discussing potential litigation with their experts, which Rule 26(b)(4)(B) protects. The Plaintiffs have not shown that the costs of discovery are so great as to make it impracticable for them to obtain the information by other means and thus to warrant an exception to the Rule.

 The facts known and opinions held by PWC are protected under Rule 26(b)(4)(B), and the Plaintiffs have failed to show exceptional circumstances entitling them to the documents they requested. At the same time, it should be noted that the Defendants may not shield relevant information from discovery merely by passing it off to a third party, including a non-testifying expert.

## III. CONCLUSION

Accordingly, this Court issues the following orders:

The Defendants are ORDERED to make available to the Plaintiffs all materials, whether originals or copies, in PWC's possession, the originals of which were once in the Defendants' possession, and which would be discoverable if still in the Defendants' possession, but which the Defendants are today unable to produce.

Further, the Defendants are ORDERED within 30 days of this order to complete a privilege log of all materials in PWC's possession concerning this litigation which the Defendants have instructed be withheld on the grounds of privilege. The privilege log is to be prepared on a document-by-document basis, and it shall indicate any materials that contain summaries of, or notes taken from, materials which were once in the Defendants' possession, and which would be discoverable if still in the Defendants' possession, but which the Defendants are now unable to produce.

In all other respects, the Plaintiffs' Motion to Compel Production of Documents [Doc. No. 104] is DENIED. The Court will entertain a more specific motion to compel production of particular materials in PWC's possession relating to particular materials which were once in the Defendants' possession but which are no longer available.

SO ORDERED.